May it please the Court. I'm Ram Sanshina. I represent the petitioners Mr. and Mrs. Saeed in this case. Your Honours, the decision of the immigration judge in this case was not supported by substantial evidence. As this Court has well noted in Hartooni v. INS, an immigration judge's credibility finding must be cogent and specific. Yet in this case, as the record shows clearly, her One of the most important things, factually speaking in this case, was the fact, as petitioners have noted in their opening brief, that the initial contact that these petitioners had with the then INS asylum office was that the asylum officer found these individuals credible. Now this was a fact that never came up at the immigration court level. The judge never trial counsel never brought it to the attention of the court and the immigration attorney never brought it up to the attention of the court. This was an important fact when viewed in the complete picture that the immigration judge painted in her oral decision that petitioners would submit was substantially weak and not supported by the evidence. For instance, there he had been detained for six hours at a police station, in an Egyptian police station. He was beaten, he was mistreated, and he was charged with degrading Islam. The immigration judge's oral decision. What do you mean by charged? I mean, there were no formal proceedings against him. The three guys just took him in or they all went to the police station and then the three said, well, he disrespected the Islamic religion or whatever, degraded it. And then the cops took him and beat him up over a period of about three days, was it? Six days. No, Your Honor, it was six hours. Six hours. And then let him go. There were no charges ever pressed against him, were there? Your Honor, that's a very astute question. The record is silent as to the specifics as to whether charges were filed. But I think the point that the court should really take note of is the fact that this individual did go to the police. The police detained him rather than the assailants. This was an important fact. The immigration judge never addressed it in her oral decision. The decision is completely silent as to this fact. Had somebody, trial counsel, the government counsel, had the judge herself, as often some immigration judges do, inquired of the government counsel, excuse me, trial attorney, do we have a credibility finding at the asylum office level? Because that should always have some bearing, Your Honors, as to where, if the judge, if the immigration judge has some doubt as to credibility. The immigration judge went on to apparently look at some country reports, but did not do so with an eye toward the fact that a presumption had been established of future persecution. I guess what I'm getting at is if your man was credible, and if what happened amounted to past persecution, he'd be entitled to a presumption of future persecution. That's correct, Your Honor. And then the I.J. would have said, well, okay, he's got this presumption, but we've now got these country reports and they rebut that presumption, therefore I'm going to deny the application of asylum. But that's not the structure of the analysis here. Is that correct? You're absolutely right, Your Honor. So you're asking us to remand it to the BIA for the I.J. to do that kind of an analysis? I would agree with that, Your Honor, yes. We are petitioners who respectfully ask that the court do that. It's interesting, Your Honor raises a pretty important point as well. The record before this immigration judge was replete with evidence from Amnesty International, basically non-U.S. governmental sources as well, which documented the voluminous amount of sufferings and persecution that Coptic Christians suffer in Egypt. Yet the immigration judge chose to read the State Department report, which for political reasons is often skewed in favor of the Republic of Egypt, since that is an ally of the United States. And even there, the examples the immigration judge chose to put out in her decision were not really relevant to the claim. For example, the immigration judge cited that Mrs. Mubarak, the first lady of Egypt, had urged tolerance. The immigration judge talked about churches being given building permits. She talked about exam schedules for schools for Christian children not being scheduled on Christmas and other Christian holidays. These were not before the court. The claim wasn't by a student claiming that he had been not permitted to go to his Christmas holiday because somebody scheduled an exam. So the examples that the judge brought out were completely not relevant to the record before her. In addition, she also made other factual statements that petitioners would submit were leaps of faith. There was only one reference in the petitioner's application for asylum to age being an issue as to the reason why he was having difficulty finding a job. One reference, Your Honors. And yet the judge took it upon herself to believe that no, this was not religious. The reason that he was not finding a job was not because of his faith but because of his age. In addition, the judge also placed great weight on the fact that the male petitioner had had a nine-year stint in Saudi Arabia from 1979 to 1988. She felt that somehow having worked and lived in Saudi Arabia, a country that is even less tolerant of Christians, somehow would ameliorate what had happened to him in Egypt. Again, this kind of reasoning is completely flawed, Your Honors, because it had nothing to do with the claim before her. It was not even a firm resettlement issue, as the government had erroneously posited on earlier hearing dates. Another factor that the immigration judge petitioners would submit heard was that the immigration judge, in her oral decision of pages 17 and 18, uses the words incredible, bizarre, and curious as to the event that occurred to the petitioner in May 1996 with the three Muslim fanatics who had beaten him up. Yet, and the immigration judge felt that this was incredible... The fanatics didn't beat him up. They got in a fight. I don't think there's anything in the record that they beat him up, is there? I believe that the petitioner testified that they attacked him and then he defended himself, and therefore it did end up being essentially a fight, which is what led them to the police station. It went on for about 20 minutes or so, then? I believe that's correct, Your Honor, yes. Yet the immigration judge felt that this was not credible, yet in the same breath, on the same page, I believe in the same paragraph, the judge turns around and says that, at most, this was a criminal act. Well, even within her limited and unclear credibility finding, there was an inconsistency there, Your Honors. And we would submit that because of all these factors, Your Honors, this case must be remanded to the BIA to send back to the immigration court to have a new hearing, properly taking in the evidence and rendering a decision that is based on the facts, on the record. If I may save some time for rebuttal, Your Honors. Please do. Thank you. Okay. Ms. Varnon. May it please the Court? Anne Varnon for the Respondent. Your Honors, the Respondent believes that the Court should, we stand by our brief and that the Court should dismiss the petition for review for lack of jurisdiction regarding the claims of reopening and reconsideration because the petitioner never filed a petition for review of that board decision. And we believe that the immigration judge's alternative findings, that the petitioner was not credible and that he also failed to meet his burden of proof, should be upheld by the Court. The immigration judge issued a very lengthy decision in this case, and I think set out very well exactly the basis for her having found this petitioner to be incredible. The fact that, I think the judge mentioned that this person had lived in Egypt as a Coptic Christian, and the immigration judge did not intimate that Coptic Christians are never discriminated against in Egypt. She acknowledged this as a fact of life in this country. However, she did point out that he had lived there for almost half a century as a Coptic Christian. He had gone away to Saudi Arabia. Yes, at this time it has more intolerance toward Christians, but the fact that he went away, he was a Christian when he left, he came back, he was a Christian when he came back, and he went back to his workplace and wanted the same job back. The immigration judge found that this was incredible for him to say that I can't get my job back because I'm a Christian, when he was a Christian his whole life, when he left, and when he came back. And so the immigration judge, who listens to numerous cases like this, day in and day out, found this to be very curious, as she said. And she seemed to have good reason for it, given that the facts are that this man, she did not dispute the fact that he is a Coptic Christian, and that there is discrimination in the country. The judge did look also at the fact that the petitioner came to the United States for a year after he had allegedly undergone persecution. How do you explain, as I recall reading the decision, the IJ never referred to this encounter with the police? Isn't that correct? I think she pointed out that this was a problem with criminal behavior, and she said that the petitioner had never made clear why he thought that these people would hang around his house for periods of time, be out standing by his car, and what was it about him that brought on this behavior by them? Did she talk about his story about the police beating him? I don't believe that she did. I don't think so. And the threats on his life, I don't think she mentioned that. I think that she did mention that he did not seek any medical attention after this. He said that he was merely bruised, but I don't believe that the immigration judge discussed that at length. Would you characterize the adverse credibility findings as explicit as to his full testimony, or were they explicit as to some parts and implicit on others? In other words, what, how would you describe the findings on credibility? Well, Judge, you see many different ways in which immigration judges express a credibility finding, and certainly all of them are aware that this court requires an express finding. Many times I have seen them and I'd like to see them where they have a heading that says, you know, adverse credibility or finding regarding credibility and so on. I don't know that it's important that the judge say, absolutely, I expressly on this record find this petitioner to be incredible. However, in this particular case, the immigration judge made it clear that with regard to the claim of religion and religion-based claim of asylum, she found the petitioner's arguments just to be lacking in credibility and very curious. Based on his Coptic Christian religion, I agree with you. I think that's what she did find. But what he's contending is that it was because he had an anti-Muslim, if you will, religious view that he got beaten by the police. It didn't have anything to do with him being a Coptic Christian. Nobody said anything about that, I don't think. They just said, well, you've insulted our religion and that's against the law, and so then the cops beat him up. And she never really dealt with that, it seemed to me, in her decision. I believe, as I recall from that, that the immigration judge, did she not note that he said that these aggressive men, who apparently were Muslim, said that he had degraded... Pardon me, the three people treated him badly because he was Coptic Christian and would not convert to Islam, I guess, if that's the correct phrase. Yes, he did say... That never came up in the police situation, as far as I could tell. Apparently, what was said to the police was that he had degraded Islamic women. Right. But the petitioner never... I don't think that there has been the allegation that he made by the petitioner, that he made anti-Muslim statements to people. He just said, I will never become a Muslim. He had been a Christian all of his life, so... The police never asked him anything, did they? They just turned him over to the goons and they beat him. Apparently. I think, though, that the immigration judge did make a finding regarding the credibility of the claim. She rejected all of his claims on the basis of lack of credibility regarding the religious persecution. And I think that she found that even if he was a Christian, if he were credible, the alleged persecution was not such that he could prevail under his burden of proof to show past persecution on account of religion. The April 8th decision of the Board of Immigration Appeals says, we agree with the immigration judge's conclusion that the respondent has not met his burden of proving eligibility for asylum, withholding, or relief under CAF. It's a one-sentence kind of statement. Accordingly, the appeal is dismissed. But when we have a sentence like that, this is not really an affirmation without opinion. That's correct. It's an affirmation without opinion. We review the IJ's decision. But when we get a one-sentence statement like this from the board, aren't we reviewing the board's decision? Both the board and the immigration judge's decision, yes. So what's the significance of the... The board didn't rely on adverse credibility determinations in its decision. It just said he didn't meet his burden of proof. What's the significance of all these adverse credibility determinations? Given the board's not adopting those, it seems to me they were kind of besides the point. The question was, if we believe everything he said, it doesn't meet his burden, because that's the way I read the board's decision. Am I missing something? No, I think that the board decision in that regard is a little fuzzy. It could be that they both considered the adverse credibility, but just decided to only mention the burden of proof. Since the board did not mention adverse credibility, and it did give a reason, even though a succinct reasoned decision, am I incorrect in thinking that we just review the board's decision, and that there's no need for us to review the adverse credibility determinations because the board didn't adopt them? Maybe I have it wrong, but that's how I'm seeing it. Okay. I think that where you have a one-sentence decision like this, that even though it is not, as you say, an affirmation without opinion, I think because of the lengthy analysis that the immigration judge gave, certainly the court would want to look at what the immigration judge said in regard to the burden of proof, but yes. We would look at it on the burden of proof, but I guess what I'm trying to understand is, do we not look at it on adverse credibility because the board didn't adopt adverse credibility? I think that either way that the bottom line is that there was no meeting of the burden of proof. Do we have precedent in the Ninth Circuit that says that if the board doesn't adopt an adverse credibility finding that then we're not supposed to consider it? I'm not, I would have to get back to the court on that, and I will be happy to, good luck. I'll check the precedent. All right. Thank you so much. Thank you. May I please the court once more? Your Honour is absolutely right. The immigration judge made no reference whatsoever to the six-hour detention at the police station. This is a flagrant failing on her part. Addressing the respondent's argument that this court cannot consider the March 2003 burning down of their home in Egypt as new evidence because a new petition for review wasn't filed, the petitioners would submit Stone v. INS is not applicable here because factually we don't have Stone v. INS as facts. In Stone v. INS, the petitioner sought to seek review of the court after he'd waited over two years to, he had waited two years after the denial of his application. He sought review by the Board of Immigration Appeals. Once the Board of Immigration Appeals denied his motion to reconsider, he then sought review at the circuit court level. That's not the case here. The petitioners here timely filed a petition for review. In addition, in their supplemental motion for stay, they brought forth that evidence to meet the Sofinet and Abassi standards for the temporary stay. The government at that point did not oppose the stay and this court then granted the stay pending disposition of the petition. Therefore, respondents actually have waived any argument in that regard because the supplemental motion that was before this court as early as August of 2003 had already disposed of that issue clearly and the court had received that evidence with reference to the burning down of their home. So, Your Honours, we would submit that Stone v. INS is absolutely not applicable in this case and the court may and should consider the events that occurred in May 2000, excuse me, March 2003 to the petitioner's home in Egypt. Your Honour, I thank the court for its time. Okay. Thank you. We thank both counsel for their very fine arguments and the Sedaris case will be submitted. Mr. Reiner, thank you again for your travel. And have a good, safe flight home.
judges: Thompson, Gould, T. Nelson